1

2

3

4                                                  **E-FILED on** ___7/11/05___

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

| | |
|---|---|
| 12  THOMAS FALLON, an Individual, ROBERT PUETTE, an Individual, CARL REDFIELD, an Individual, RICK TIMMINS, an Individual, on behalf of each, individually, and on behalf of the general public, | Case No. C-04-03210 RMW  MOTION DENYING WITHOUT PREJUDICE STAY OF PROCEEDINGS  **[Re Docket No. 37]** |

12    THOMAS FALLON, an Individual, ROBERT
      PUETTE, an Individual, CARL REDFIELD, an
13    Individual, RICK TIMMINS, an Individual, on
      behalf of each, individually, and on behalf of the
14    general public,

15                          Plaintiffs,
                  v.
16
      LOCKE, LIDDELL & SAPP, LLP, a Texas
17    limited professional partnership, and DOES 1
      through 100,
18
                          Defendants.
19

Case No. C-04-03210 RMW

MOTION DENYING WITHOUT PREJUDICE
STAY OF PROCEEDINGS

**[Re Docket No. 37]**

20

21        Defendant Locke, Liddell & Sapp moves to stay further proceedings in this case.  Plaintiffs oppose

22    the motion.  The motion was heard on July 1, 2004.  The court has read the moving and responding papers

23    and considered the parties' arguments.  For the reasons discussed below, the court denies without

24    prejudice defendant's motion to stay.

                              **I.   BACKGROUND**
25
26        Plaintiffs Robert Puette, Carl Redfield, Rick Timmins, and Tom Fallon are individuals, all of whom

27    reside within the County of Santa Clara, California.  Compl. ¶¶ 10-13.  Defendant Locke, Liddell & Sapp,

28    LLP ("LL&S") is a Texas law firm based in Dallas, with offices in Austin, Houston, and New Orleans.  *Id.* at

1   ¶ 14.  Plaintiffs allege that LL&S renders legal services to clients in the State of California, including plaintiffs.

2   *Id.*

3          In 1999, defendant learned that Ernst & Young ("E&Y") was looking for a tax opinion for a new tax

4   strategy called the Contingent Deferred Swap strategy ("CDS strategy") that E&Y had been promoting.  Mot.

5   to Dismiss at 2.  This strategy was intended to provide participants with a tax savings by converting ordinary

6   income into capital gains to obtain a one year deferral of taxes.  *Id.*  E&Y contacted Brent Clifton, an attorney

7   at LL&S, to obtain his preliminary opinion on whether the International Revenue Service ("IRS") would

8   approve of the CDS strategy.  *Id.* at 3.  Clifton reported back to E&Y that he could provide a "should" opinion

9   on the CDS Strategy.  *Id.*  Clifton made evaluations for defendant's customers in the form of opinion letters.

10  *Id.*

11         Plaintiffs entered into contracts with defendant "concerning the nature and scope of LL&S's

12  engagement" that would provide plaintiffs with a legal analysis of E&Y's CDS strategy.  Compl. ¶ 18.  The

13  letters sent by defendant to plaintiffs stated that defendant has a special understanding of investment; that an

14  opinion would be provided of the "principle [sic] tax consequences of [plaintiffs'] investment"; that defendant

15  would review all of plaintiffs documents and discuss the investment with plaintiffs and give its opinion of the tax

16  consequences; that investment should provide plaintiffs with "substantial tax benefits"; and that each plaintiff

17  would pay $50,000 for the opinion letter.  *Id.*  Plaintiffs each invested between $6 million and $20 million to

18  acquire a limited partnership interest in the CDS strategy sold to them by defendants.  *Id.* at ¶¶ 10-13.

19  However, plaintiffs allege that defendant never met nor spoke with them concerning their investment strategies.

20  *Id.* at ¶ 19.

21         Plaintiffs claim that defendant had decided to provide plaintiffs with "favorable tax opinion[s]" before

22  plaintiffs ever retained it as a legal advisor.  *Id.* at ¶ 20.  The opinion letters provided a detailed explanation of

23  tax shelters and distinctions between lawful tax avoidance and unlawful tax evasion.  *Id.* at ¶ 21.  The opinion

24  letters specifically stated that "partnership should be respected [by the taxing authorities] as a partnership for

25  federal income tax purposes."  *Id.*  The letters claimed to rely on "substantial authority" for this opinion.  *Id.*

26  Plaintiffs allege that this wording communicated to plaintiffs a sense of confidence on defendant's part that the

27  strategy would be effective.  *Id.*  Additionally, the letter failed to mention adverse tax law about which

28  defendant allegedly was aware.  *Id.* at ¶ 22.

1   On May 28, 2002, the IRS issued a notice declaring that the CDS strategy was "not allowable." Mot.

2   to Dismiss at 3.  It advised individuals who had used this strategy to file amended returns.  Watkins Decl. Ex.

3   A.  It is not currently known how plaintiffs responded to the IRS notice, but plaintiffs have not yet received a

4   deficiency notice outlining their tax liability for using the CDS strategy.  Mot. to Dismiss at 3.  The IRS has not

5   yet assessed the penalties, if any, for which plaintiffs will be responsible.  *Id.*

6   On June 15, 2004, plaintiffs filed a complaint against defendant alleging breach of contract, breach of

7   fiduciary duty, professional negligence, negligent misrepresentation, intentional misrepresentation, and unfair

8   business practices under California Business and Professions Code section 17200.  Compl. ¶¶ 29, 32-37, 41-

9   43, 46-48, 51-56.

10   ## II.   ANALYSIS

11   ### A.      Discretion to Stay Further Proceedings

12   Defendant moves to stay these proceedings pending resolution of plaintiffs' tax liability.  "District courts

13   ordinarily have authority to stay proceedings." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see Clinton*

14   *v. Jones*, 520 U.S. 681, 706-07 (1997) ("District Court has broad discretion to stay proceedings as an

15   incident to its power to control its own docket."); *Bureerong v. Uvawas*, 167 F.R.D. 83, 87 (C.D. Cal.

16   1996).  "Even if the other proceedings do not control the outcome in the action before the court, a stay may

17   be appropriate." *Agcaoili v. Gustafson*, 844 F.2d 620, 624 (9th Cir. 1988).  The Ninth Circuit held that:

18   
19   > "[a] trial court may, with propriety, find it is efficient for its own docket and the
20   > fairest course for the parties to enter a stay of an action before it, pending
21   > resolution of independent proceedings which bear upon the case. This rule applies
22   > whether the separate proceedings are judicial, administrative, or arbitral in
23   > character, and does not require that the issues in such proceedings are necessarily
24   > controlling of the action before the court."

21   *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) *cert. denied*, 444

22   U.S. 827 (1979);  *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 184 (1952)

23   ("Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left

24   to the lower courts."); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir.

25   1983).  It is clear that this court may employ its discretion in determining whether a stay of further proceedings

26   is appropriate in this action.  Neither party contests this point. Pl. Opp. at 6.  However, the courts must apply

27   the balancing test outlined below.

28

1

## B.        Balancing Test to Stay Action

2      The Ninth Circuit sets out the factors that must be considered in order to issue a stay of further

3   proceedings in an action.  It requires a balancing test where the "competing interests" at issue are weighed

4   against one another, including the damage that might result from granting a stay, the hardship that a party forced

5   to go forward might face, and the "orderly course of justice." *Cmax, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.

6   1962).  The court must look at the benefit to the court of granting the stay, the prejudice to plaintiffs the stay

7   may cause, and the prejudice to defendant if the stay is not granted.  *Rivers v. Walt Disney Co.*, 980 F. Supp.

8   1358, 1360 (C.D. Cal. 1997); *Gray v. First Winthrop Corp*., 133 F.R.D. 39, 40 (N.D. Cal. 1990).

9   Additionally, "the burden is on the party seeking the stay to show that there is pressing need for delay, and that

10  neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council v. U.S.*

11  *Dist. Court, S. Dist. of Ohio*, 565 F.2d 393, 396 (9th Cir. 1977).

12
### 1.        Interest of Justice and Benefits to the Court

13     Courts may stay proceedings to "control the disposition of the causes on its docket with economy of

14  time and effort for itself, for counsel, and for litigants," as long as competing interests are weighed and a balance

15  is maintained.  *Barapind v. Reno,*  72 F. Supp. 2d 1132, 1147 (E.D. Cal. 1999) (citing *Landis*, 299 U.S. at

16  254-55).  In this case, it seems unlikely that judicial efficiency will be promoted if the court stays further

17  proceedings in this case.

18     In *Filtrol*, there were two pending patent cases, one of which was in California and the other in

19  Connecticut.  *Filtrol*, 467 F.2d at 244-45.  Defendants asked the district court to stay all further proceedings,

20  but the court denied the motion.  *Id.*  The Ninth Circuit refused to reverse district court's denial of a stay, ruling

21  that it was within the power of the district court to make that determination.  *Id.* at 244.  A district court with

22  a justiciable controversy before it is not required to "await the outcome of a pending action in another district."

23  *Id.* at 245; *see Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971).  The court in

24  *Filtrol* found that even though the indeterminate state of the Connecticut case could have substantively affected

25  the decision for the California case, this fact alone did not provide the court with an adequate interest to issue

26  a stay of further proceedings to preserve judicial economy.  In this case, the IRS proceedings will not result in

27  a determination that could alter the substantive law in this case.  Instead, the IRS administrative hearings will

28

1    only alter the amount of damages plaintiffs may seek against defendant.  This is not an adequate reason to issue

2    a stay of further proceedings in the interest of the court.

3        Defendant also cites *United Gas Pipe Line Co. v. Tyler Gas Serv. Co.*, 247 F.2d 681 (5th Cir.

4    1957) and *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 218 (D. Del. 1991) in

5    support of its motion to stay this action pending the resolution of the IRS proceedings.  While the courts in those

6    cases granted stays pending concurrent administrative agency investigations, the cases are distinguishable from

7    the present action.  In *United Gas*, the court stayed the action between the parties, pending court of appeals

8    review of an administrative action decision on appropriate tariff rates.  247 F.2d at 681-83.  That case is

9    distinguishable because the court of appeals made an administrative review of the validity of the tariff rates.

10   However, the IRS's determination of damages in the present action will not affect plaintiffs' ability to assert

11   causes of action against the defendant.  Rather, it will alter the amount of damages that plaintiffs seek.

12       Similarly, *United Sweetener* involved a patent case in which the court granted a stay of further

13   proceedings pending a reexamination of the validity of the patent.  766 F. Supp. at 216.  *United Sweetener*

14   is distinguishable from the present action because the determination of the validity of the patent directly affected

15   whether further litigation of the issue would be necessary.  Here, by contrast, the determination of the damages

16   plaintiffs owe to the IRS will not affect whether the lawsuit goes forward, again, it will impact the amount of

17   damages.

18       As it appears that the decision to be made by the IRS regarding plaintiffs' taxes will alter the amount

19   of damages plaintiffs can seek against defendant, a delay in further judicial proceedings is not in the interest of

20   judicial economy, particularly because the IRS has already determined the legality of the CDS strategy.  *Yong*

21   *v. I.N.S.*, 208 F.3d 1116, 1120-21 (9th Cir. 2000) (stating that importance of judicial economy is undermined

22   when a stay presents the possibility of an "indefinite, and potentially lengthy delay to the advancement of the

23   case.").  As both parties agree, some damages can be accurately determined in the form of fees that plaintiffs

24   paid to E&Y and LL&S.  Pl. Opp. at 5-7; Def. Reply at 2.  Plaintiffs all cite damages of $50,000 for fees paid

25   to LL&S and between $500,000-$600,000 in fees paid to E&Y.[1]  Pl. Opp. at 5.  Defendant claims that

26   _____

27       [1]    Plaintiffs also argue that their attorney's fees constitute damages in this case.  However, the
     court notes that this may not necessarily be the case.  The "American Rule" states that "each party to a
28   lawsuit must generally bear his or her own costs; in other words, the prevailing litigant cannot collect
     attorney fees from the losing litigant. All federal courts use this rule unless one of five specific exceptions to

1   plaintiffs' damages "are not legally cognizable" until the IRS investigation is complete. Mot. to Dismiss at 2.

2   However, defendant does not provide any support for this contention nor does it cite any authority showing

3   that an assessment of penalties is required for plaintiffs to seek redress from defendant. With ascertainable

4   damages for plaintiffs' causes of action, the court's interest in the orderly course of justice is best served by

5   proceeding with discovery in this action.

### 2.    Prejudice to Plaintiffs

7   The court's interest in staying the proceedings is balanced against the possible prejudice to the parties.

8   *Cmax*, 300 F.2d at 268. Plaintiffs argue that a stay of proceedings would prejudice their ability to conduct

9   discovery in preparation for the litigation of this case. Pl. Opp. at 12. According to plaintiffs, out-of-state

10  witnesses for this action are currently available to be deposed, and staying these proceedings might increase

11  the difficulty of securing their testimony in the future. *Id.* Additionally, the passage of time could fade memories

12  relevant to this action. *Id.* The court agrees that plaintiffs access to evidence should not be impeded to wait

13  for a determination from the IRS that will potentially only impact the amount of damages, rather than the

14  substantive basis for this complaint.

### 3.    Prejudice to Defendant

16  The court also considers any prejudice that defendant will suffer if the court does not grant the stay.

17  *Cmax*, 300 F.2d at 268. Defendant claims that it will suffer prejudice in the form of substantial litigation costs

18  that could be unnecessary, depending upon the determination of the IRS of plaintiffs' tax status. Mot. to

19  Dismiss at 6. However, plaintiffs claim they have already suffered damages. The IRS's decision will not affect

20  the damages that plaintiffs have allegedly incurred in the form of fees paid to LL&S and E&Y. Pl. Opp. at 5.

21  Even if the IRS chose to grant amnesty to plaintiffs for their use of the CDS strategy, plaintiffs argue that these

22  damages would still exist and this action could still go forward.

23

24

---

25  the rule applies. These five exceptions are: (1) statutory, when Congress specifically provides in a statute
    that the prevailing litigant is entitled to attorney fees; (2) contractual, when a contract provision allows for

26  attorney fees in litigation on the contract, but only when the decision is based on state law; (3) when a
    litigant purposely disobeys a court order; (4) when a losing litigant has acted in bad faith; and (5) when a

27  litigant recovers a common fund that benefits others." *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*,
    241 U.S. 240, 258 (1975); *See F.D. Rich v. United States ex rel Indus. Lumber Co.*, 417 U.S. 116,

28  126 (1974); *Ex rel Reed v. Callahan*, 884 F.2d 1180, 1185 (9th Cir. 1989). Plaintiffs have not asserted
    an exception to this rule that would allow them recovery for attorney's fees.

1    Defendant merely speculates that plaintiffs' liability may be excused by the IRS.  However, plaintiffs

2  assert existing damages that are independent of the IRS's administrative investigation.  Based on the arguments

3  presented to the court, it is unclear that the IRS's failure to assess penalties would result in eliminating plaintiffs'

4  claims against defendant.  Without further evidence of prejudice, it does not appear that defendant will be

5  disadvantaged if discovery and other proceedings go forward in this action.  Defendant has the burden of

6  proving that a stay is necessary as the moving party.  *Ohio Envtl. Council*, 565 F.2d at 396.  The court

7  concludes that defendant has not met its burden of proving that there is a pressing need for delay.  Balancing

8  the factors favors permitting this action to proceed with discovery as set forth at the parties' December 10,

9  2004 case management conference.  Nevertheless, the court recognizes that the case could not proceed to trial

10  until the full extent of plaintiffs' tax liability is understood.   Thus, although the court presently declines to stay

11  the action pending determination by the IRS of possible tax penalties to plaintiffs, defendants may bring another

12  motion to stay at a later point in the litigation.

13                                        **III.   ORDER**

14    For the foregoing reasons, the court, in its discretion, denies without prejudice defendant's motion to

15  stay further proceedings in this action.

16

17

18  DATED:     _____7/8/05_____          _____/s/ Ronald M. Whyte_____
                                                     RONALD M. WHYTE
19                                                   United States District Judge

20

21

22

23

24

25

26

27

28

MOTION DENYING WITHOUT PREJUDICE STAY OF PROCEEDINGS—C-04-03210
MAG                                        7

1   **Notice of this document has been electronically sent to:**

2   **Counsel for Plaintiff(s):**
   Anthony B. Gordon     law@anthonybgordon.com

3   David Lefkowitz        dl@wplawgroup.com

4   **Counsel for Defendant(s):**
   James A. Murphy       jmurphy@mpbf.com

5   Harlan B. Watkins      hwatkins@mpbf.com

6

7   Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

8

9

10   **Dated:** _____7/11/05_____    _____/s/ MAG_____

11                                          **Chambers of Judge Whyte**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28