**E-Filed**
August 4, 2005

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS FALLON, ET AL., | NO. 5:04-cv-3210 RMW (RS) |
| Plaintiffs, | **ORDER DENYING NON-PARTY'S MOTION FOR PROTECTIVE ORDER AND GRANTING MOTION TO MODIFY SUBPOENA** |
| v. | |
| LOCKE, LIDDELL & SAPP, LLP, ET AL., | |
| Defendants. | |

## I. INTRODUCTION

Third party witness Ernst & Young, LLP, ("E&Y") moves for a protective order or to modify the subpoena duces tecum and associated deposition subpoena ("subpoena") issued by plaintiffs Robert Puette, Carl Redfield, Tom Fallon, and Rick Timmins ("plaintiffs"). E&Y claims that the subpoena is improper due to plaintiffs' agreement to limit discovery, as set forth in their engagement letters with E&Y. Additionally, E&Y contends that the subpoena is overbroad and calls for protected and privileged information. The motion was fully briefed and heard by the Court on July 27, 2005. Based on all papers filed to date, as well as on the oral argument of counsel, E&Y's motion for a protective order is denied and its motion to modify the subpoena is granted, as explained below.

\\\

## II. BACKGROUND

Plaintiffs filed suit against Locke, Liddell & Sapp, LLP ("LL&S") in California state court on July 12, 2004, alleging professional negligence, breach of fiduciary duty, fraud, and unfair business practices in the aftermath of a failed tax shelter (Contingent Deferred Swap Strategy or "CDS") that allegedly cost plaintiffs millions of dollars. LL&S had provided tax opinion letters for plaintiffs in connection with CDS. According to plaintiffs, the bulk of their dealings on the CDS program were through E&Y. They contend, in fact, that LL&S compromised its independence and "sold" CDS on E&Y's behalf rather than undertaking a thorough investigation of the risks of the strategy as an independent fiduciary should have done. LL&S removed the action to federal court on August 6, 2004.[1]

Plaintiffs issued a subpoena to E&Y to obtain documents and to take a Fed. R. Civ. Pro. 30(b)(6) deposition in preparation for a mediation between plaintiffs and LL&S. E&Y contends that the subpoena is barred by the engagement agreements between E&Y and plaintiffs ("engagement agreements"), which specify that any "controversy or claim" related to that contractual relationship will be resolved through voluntary mediation or arbitration, and that no discovery will take place in the course of those proceedings apart from that ordered by the arbitrator. See, e.g., Exh. B to Flood Decl. E&Y also argues that the subpoena is overbroad and calls for legally protected and privileged information. E&Y additionally makes several specific objections to individual requests and topics and moves for a protective order or to modify the subpoena.

## III. STANDARDS

Entry of a protective order is warranted where the moving party establishes "good cause" for an order and justice so requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. Fed. R. Civ. Pro. 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips v. General Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Beckman Industries, Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) (citation omitted).

---

[1] Neither plaintiffs nor LL&S, however, have joined E&Y to this action. Pursuant to the presiding judge's order, E&Y may no longer be joined as a party. See Order Filed on Dec. 16, 2004.

2

Fed. R. Civ. Pro. 45(c)(3)(A)(iv) provides that a court may quash or modify an issued subpoena if it "subjects a person to undue burden." Non-parties have standing to assert that subpoenas seek non-relevant information. Compaq Computer Corp. v. Packard Bell Elecs., Inc., 163 F.R.D. 329, 335-36 (N.D. Cal. 1995).

## IV.  DISCUSSION

### A.  Plaintiffs' Engagement Agreements and the Subpoena

E&Y argues that, by entering into contracts stipulating that arbitration would be the sole means of resolving disputes between it and plaintiffs and that discovery would not be available in the absence of an order from the arbitrator, plaintiffs have waived their right to seek discovery from E&Y as a third party. Although E&Y has not been added to the present action, it contends that plaintiffs have made it clear that a "controversy or claim" exists, thereby triggering the engagement agreements. Therefore, E&Y argues, the Court should enter a protective order preventing discovery outside of the procedures set forth in the engagement agreements between plaintiffs and E&Y. Plaintiffs respond that E&Y is a necessary witness to the suit against LL&S and that they have neither sued E&Y nor initiated an arbitration proceeding. Thus, plaintiffs contend, discovery should proceed against E&Y as it would against any other third party, irrespective of the engagement agreements.

When parties agree to arbitrate a dispute, they may agree to make unavailable many of the processes of federal litigation, including discovery. Burton v. Bush, 614 F.2d 389, 390 (4th Cir. 1980). Arbitration agreements are to be enforced broadly, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). The clause used in the engagement agreements, "any controversy or claim arising out of or related to tax and tax-related services now or hereafter provided by us to you," is a classic "wide" arbitration clause and has been the subject of considerable judicial review. See, e.g., Chiron v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1131 (9th Cir. 2000). In interpreting the language of this clause, courts have looked to dictionary definitions of "arising out of" and "related to" to find that, while "arising out of" implies a causal relationship, "related to" does not and instead falls within the orbit of phrases such as "in connection with," "associated with," "with respect to," and "with reference to." See Coregis, Inc. v. American Health Foundation, Inc., 241 F.3d 123, 129 (2d Cir. 2001) (widely surveying interpretations

of "arising out of" and "related to"). The Ninth Circuit has construed the phrase "in connection with" in an arbitration clause quite "expansively." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720 (9th Cir. 1999).

While arbitration clauses are expansively read to include the widest possible ambit of issues arising between the parties to an agreement, no Circuit court has had the opportunity to question whether such a clause applies to a third-party dispute that is arguably "related to" the agreement between the parties. E&Y points to a district court decision in Texas which, in interpreting an identical arbitration clause in a different E&Y contract, found that a bankruptcy trustee could not seek discovery under Bankruptcy Rule 2004 even though no formal arbitration proceedings had begun between the trustee and E&Y. In re Daisytek, Inc., 323 B.R. 180 (N.D. Tex. 2005). The court held that "to the extent the [bankruptcy] court is suggesting that the clauses afford Ernst & Young no protection from discovery before the initiation of formal arbitration proceedings, its interpretation appears to misread the ["controversy or claim"] clauses, and it should reconsider this interpretation if it is material to its decision on remand." Id. at 188.

This matter and Daisytek, however, arise in very different contexts. The trustee in Daisytek stands in the shoes of the bankrupt corporation and acts as the corporation's representative under the law; thus, Daisytek does not squarely address an assertion of an arbitration provision as a defense to third-party discovery. 11 U.S.C. § 323 (trustee is "the representative of the estate"). While Daisytek is useful for the principle that a contractually cognizable controversy may arise before one party sues another, it does not bridge the gap between previous case law encouraging arbitration and the wide latitude given to litigants in seeking discovery from each other and from third parties. See, e.g., Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993) (holding that a broad right to third party discovery is "based on the general principle that litigants have a right to every man's evidence" (internal quotations and citation omitted)).

Furthermore, unlike the situation in Daisytek, E&Y is not being asked to produce documents simply in preparation for a probable lawsuit. Instead, E&Y is being deposed as a witness to the present action. Under these circumstances, the Court does not find that the Engagement Agreements preclude discovery.[2]

B. E&Y's General Objections

In addition to its argument that the subpoena itself is barred by the Engagement Agreements, E&Y

---

[2] Additionally, in the absence of any contractual provision specifically limiting plaintiffs' third-party discovery rights, the canons of contract interpretation direct the Court to interpret the ambiguous scope of the discovery provisions against the drafter, E&Y. See Fox v. Aced, 49 Cal. 2d 381, 384 (1957).

4

makes objections to many of the Rule 45 examination topics and Rule 30(b)(6) document production categories on the grounds that they are overbroad, unduly burdensome, irrelevant to plaintiffs' litigation against LL&S, or protected by privilege and statutory protections.  E&Y moves for an order modifying the subpoena to reflect these alleged defects.

### 1. IRS Code § 7216

E&Y objects to several categories of documents and examination topics in the subpoena pursuant to IRS Code § 7216, which prevents tax preparation firms from disclosing "any information furnished... for, or in connection with, the preparation of any such [tax] return." 26 U.S.C. § 7216(a)(1).  Exceptions exist for disclosure pursuant to a court order.

The Ninth Circuit has considered the question of whether a third party's tax returns are proper targets of discovery.  Premium Service Corp. v. Sperry & Hutchinson Co., 511 F.2d 225 (9th Cir. 1975). In finding that a non-party's tax return information was not discoverable, the Circuit held that there is no blanket and absolute protection against a court compelling tax return information in discovery, but "a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." Id. at 229.  Thus, the Circuit found, it is within the proper discretion of a lower court to quash a subpoena for a third party's tax returns "on the primacy of this policy." Id.

Notwithstanding that general policy, here the discovery requests do not appear to require the disclosure of individual tax returns or individualized return information.  Therefore, the subpoena need not be modified for purposes of Section 7216.

### 2. Privilege

E&Y objects to much of the subpoena on the grounds that it calls for information that is either privileged or entitled to work-product protection.  E&Y notes that it "is unable to provide at this time descriptive information regarding each of its claims to privilege and work-product protection" due to the broad nature of the subpoena and contends that the privilege review itself would be unduly burdensome. Plaintiffs respond that, in the absence of a privilege log, E&Y has not met its burden of demonstrating that the documents requested are privileged.

E&Y has the burden of establishing that information sought under the subpoena is privileged.

5

1  United States v. Martin, 278 F.3d 988, 999-1000 (9th Cir. 2002).  A Pennsylvania district court has
2  considered the question of whether a privilege review should be excused on the grounds that it is unduly
3  burdensome and found that it should not, as the plain language of Fed. R. Civ. Pro. 26(b)(5) requires the
4  party asserting a privilege to "describe the nature of the documents... in a manner that... will enable other
5  parties to assess applicability of the privilege or protection."  Northwood Nursing & Convalescent Home,
6  Inc. v. Continental Ins. Co., 161 F.R.D. 293, 299 (E.D. Pa. 1995) (citations omitted).  While Northwood
7  does not address third-party discovery, the plain language of Rule 26(b)(5) applies to third parties as well
8  as to litigants.  Therefore, in order to assert its claim of privilege properly, E&Y must produce a privilege
9  log to plaintiffs within thirty (30) days of the date of this order in response to any request to which it claims
10 a privilege.

     3. Third-Party Discovery Protections

  E&Y argues that the costs of surveying its nationwide offices and partners for documents and information relating to the subpoena are overly burdensome, as E&Y is not a party to this litigation. Plaintiffs argue that E&Y, a large corporation, is well-equipped to manage the discovery required under the subpoena and that the digital revolution has lowered discovery costs in any event.  E&Y has not submitted affidavits or other evidence to support its arguments regarding the burden created by plaintiffs' requests. The Ninth Circuit has emphasized that a third party subpoena can be quashed or modified on the grounds that it is overly burdensome only if the third party shows an undue burden with "specific examples or articulated reasoning."  Beckman, 966 F.2d at 476.  E&Y has not provided any such affidavits to support its contention of undue burden.  While it observes that the subpoena calls for documents and information across its nationwide offices, E&Y does not advance any particular showing regarding the time or expense that responding to the subpoena will require.  In the absence of such evidence, the subpoena will not be modified on the grounds that it is overly burdensome.[3]

  C. E&Y's Specific Objections to Requests

  The topics for examination, the subpoena for document production, and E&Y's objections to individual requests can be broken down into several categories.

---

[3] E&Y also argues that the subpoena is overbroad as it does not stipulate date limitations for many of the requests. Plaintiffs' counsel made clear at oral argument that they are requesting documents only from 1999 to 2002, and the Court accepts this stipulation as a reasonable limit on the scope of the subpoena.

6

### 1. Rule 45 Examination Topics One Through Five

Plaintiffs' Fed. R. Civ. Pro. 45 examination topics one through five request information regarding E&Y's document retention, destruction, and production procedures. E&Y objects on the grounds that this information is irrelevant to the litigation against LL&S. These topics, however, are calculated to lead to the discovery of admissible evidence in that they assist in analyzing relevant information received or not received in response to other discovery requests. E&Y's objections to these topics, therefore, are overruled.

### 2. Rule 45 Examination Topics Six Through Ten and Rule 30(b)(6) Document Category Fourteen

Plaintiffs' examination topics six through ten request information about the parties to whom E&Y has previously produced CDS documents, as well as information regarding some specific documents E&Y provided to the United States Senate. E&Y objects to these requests as irrelevant to the lawsuit against LL&S. The objection is sustained, as plaintiffs do not adequately demonstrate any connection between their claims against LL&S and the identities of the prior recipients of CDS documents from E&Y or information about documents produced in the course of a Congressional investigation. Similarly, plaintiffs' document category fourteen requests communications between E&Y and Refco Capital Markets Ltd. ("Refco"). Refco is not a party to the litigation, nor is it directly implicated in any claim or defense. E&Y's objection that these categories are irrelevant is sustained.

### 3. Rule 45 Examination Topics Eleven Through Fourteen and Eighteen Through Twenty and Rule 30(b)(6) Document Categories One Through Three and Six

Plaintiffs' examination topics eleven through fourteen and eighteen through twenty request information on the identity of the CDS developers at E&Y; the persons at E&Y who referred CDS clients to LL&S; the circumstances under which those referrals occurred; the nature of the CDS information provided to LL&S; CDS communications between E&Y and LL&S; and, E&Y's CDS marketing materials. E&Y objects that these topics are overly burdensome, but, as noted above, it has submitted no evidence to support that assertion. Therefore, E&Y's objections are overruled. The Court notes, however, that the date parameter to which plaintiffs' counsel stipulated at oral argument restricts the time period to 1999 through 2002.

Plaintiffs Fed. R. Civ. Pro. 30(b)(6) document categories one through three request CDS communications between E&Y and LL&S; the CDS marketing materials; and, communications between E&Y and LL&S regarding client referrals for tax opinion letters. These categories may be relevant to plaintiffs' claim that LL&S compromised its independence due to its close relationship with E&Y, as they request communications between LL&S and E&Y, E&Y's CDS marketing materials, and communications between E&Y and LL&S regarding client referral. To the extent that E&Y claims these requests call for the production of privileged information, as indicated above, it shall provide a privilege log to plaintiffs within thirty (30) days of the date of this order and it shall provide all other responsive documents within the same time frame.

Plaintiff's sixth document category asks for the names and addresses of all people referred by E&Y to LL&S for CDS tax advice. This request does not appear to satisfy the relevance threshold for discovery. E&Y's objections, therefore, are sustained with respect to this document request.

4. <u>Rule 45 Examination Topics Fifteen Through Seventeen and Rule 30(b)(6) Document Category Seven</u>

Plaintiffs' examination topics fifteen through seventeen and document production category seven address E&Y's relationship with Bolton Capital Planning, LLC ("Bolton"). While E&Y properly notes that Bolton is yet another unrelated third party to this litigation, plaintiffs' complaint makes clear that they are alleging that the close relationship between LL&S, E&Y, and Bolton compromised LL&S' independence and caused a breach of its fiduciary duty. Complaint at ¶ 34. Plaintiffs are entitled to seek evidence related to this allegation. E&Y's objections are, accordingly, overruled. Plaintiffs may inquire into these areas and E&Y shall provide all non-privileged, responsive documents to plaintiffs within thirty (30) days of the date of this order.

5. <u>Rule 45 Examination Topic Twenty-One and Rule 30(b)(6) Document Categories Nine Through Twelve</u>

Examination topic twenty-one, as well as document production categories nine through twelve, request information concerning plaintiffs' referral to LL&S for a tax opinion letter allegedly after their investment in the CDS scheme, and the production of communications between LL&S and E&Y regarding the CDS strategy for the four named plaintiffs. Since these communications are relevant and discoverable

8

as they are related to the claims and defenses raised in this litigation and E&Y has failed to demonstrate that the requests are overly burdensome, E&Y's objections thereto are overruled. E&Y also objects that the information is protected by IRS Code section 7216, but the Court finds that the proper scope of the document production will not implicate that code provision.

As a result, plaintiffs may inquire into this area and E&Y shall produce all non-privileged, responsive documents to plaintiffs within thirty (30) days of the date of this order. As to any documents which E&Y contends are privileged, it shall provide a privilege log to plaintiffs at that same time.

6. <u>Rule 45 Examination Topics Twenty-Two through Twenty-Four and Rule 30(b)(6) Document Category Fifteen</u>

Examination topic twenty-two asks whether E&Y is at fault for plaintiffs' alleged damages, while topic twenty-three asks for information provided by E&Y to plaintiffs related to any CDS risks. E&Y properly objects to these requests on the grounds that the first calls for a legal conclusion rather than facts and, therefore, is not a proper question for deposition, and that the topics do not bear on a claim or defense made against or by LL&S and are, accordingly, irrelevant. E&Y's objections to these topics are sustained.

Examination topic twenty-four requests the identities of any persons at E&Y who solicited plaintiffs' investments in CDS and document category fifteen requests the production of inter-office memos and e-mail related to the tax consequences arising out of the CDS program. E&Y objects that those documents are privileged, irrelevant and, in any event, should already be in plaintiffs' possession. Nonetheless, plaintiffs are entitled to identify definitively the individuals who were involved in soliciting their investments in CDS, and those identities are relevant to their claims against LL&S. E&Y's objections are, therefore, overruled and E&Y shall produce the requested information and provide a privilege log to plaintiffs, as well as all other responsive documents, within thirty (30) days of the date of this order.

7. <u>Rule 45 Examination Topic Twenty-Five</u>

Examination topic twenty-five requests information on the manner in which LL&S calculated its tax opinion fees. E&Y objects that it is not in a position to testify on that question. With the understanding that E&Y need only provide information in its possession and that the question is perhaps better addressed to LL&S, E&Y's objections are overruled.

8. <u>Document Production Categories Four, Five, Eight, and Thirteen</u>

9

Plaintiffs' document production categories four, five, and thirteen request any documents related to legal research done by either E&Y or LL&S regarding the CDS strategy, as well as any other LL&S opinion letters. Document production category eight requests all LL&S draft opinion letters. E&Y objects that the requested information is privileged. Again, in order to claim privilege, E&Y must produce a privilege log to plaintiffs within thirty (30) days of the date of this order. Otherwise, E&Y must provide all responsive documents within the same time frame.[4]

## V.  CONCLUSION

For the reasons stated above, E&Y's motion for a protective order is denied and its motion to modify the subpoena is granted. To the extent required under the now-modified subpoena, E&Y will produce the requested documents within thirty (30) days of the date of this order, and for those withheld on a claim of privilege, will produce a privilege log within the same time frame. The deposition(s) shall occur at a mutually agreeable time and place, pursuant to the scheduling order

\\\

issued by the presiding judge.

IT IS SO ORDERED.

Dated:  August 4, 2005                                           /s/ Richard Seeborg
                                                                 RICHARD SEEBORG
                                                                 United States Magistrate Judge

---

[4] Plaintiffs have stated that they are no longer pursuing examination topics 26 and 27. Pls. Opp. at p. 20, line 3.

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Ashley Marie Bauer     ashley.bauer@lw.com, gia.casteel-brown@lw.com

Anthony B. Gordon     law@anthonybgordon.com, lindagordon@socal.rr.com

Randall Thomas Kim     randall.kim@LW.com,

David Lefkowitz     dl@wplawgroup.com,

Dana N. Linker     dana.linker@lw.com

James A. Murphy     jmurphy@mpbf.com,

Harlan B. Watkins     hwatkins@mpbf.com,

**Dated: 8/4/05**                                              **Richard W. Wieking, Clerk**

                                                               **By:____DM_____**
                                                                      **Chambers**