1   ANTHONY B. GORDON, (SBN 108368)
    ANTHONY B. GORDON, a Professional Law Corporation
2   5550 Topanga Canyon Boulevard, Suite 200
    Woodland Hills, CA 91367-6478
3   (818) 887-5155 Phone
    (818) 887-5154 Fax
4

5   Attorneys for Plaintiffs THOMAS FALLON, ROBERT PUETTE,
    CARL REDFIELD AND RICK TIMMINS
6

7

8                  IN THE UNITED STATES DISTRICT COURT FOR

9                    THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION
                                              E-FILING ***12/7/06***
11

12   THOMAS FALLON, an individual,        )   Case No. C 04-3210 RMW
     ROBERT PUETTE, an individual, CARL   )
13   REDFIELD, an individual, RICK        )
     TIMMINS, an individual, on behalf of each, )  STIPULATION AND [PROPOSED]
14   individually, and on behalf of the general )  ORDER ON GRANTING
     public,                             )   PLAINTIFFS LEAVE TO FILE A
15                                        )   FIRST AMENDED COMPLAINT
                                          )
16            Plaintiffs,                 )
                                          )    Courtroom 4:
17   vs.                                  )
                                          )   [Hon Richard Seeborg]
18                                        )
     LOCKE, LIDDELL & SAPP, LLP, a Texas  )
19   limited professional partnership; and DOES )
     1 through 100,                       )
20                                        )
              Defendants.                 )
21   _____ )

22        WHEREAS Plaintiffs THOMAS FALLON, ROBERT PUETTE, CARL

23   REDFIELD and RICK TIMMINS filed this action in the Superior Court of California,

24   Santa Clara, on June 15, 2004;

25        AND WHEREAS, defendant LOCKE, LIDDELL & SAPP, LLP, removed the

26   case to this Honorable Court on August 6, 2004;

27        AND WHEREAS, Plaintiffs are desirous of amending the complaint by

28   permitting an additional party, ALEXANDRE BALKANSKI, to join in this action

                                         1

1    through the filing of a First Amended Complaint that includes him;

2         IT IS NOW AGREED AND STIPULATED BY AND BETWEEN THE

3    PARTIES, through their respective counsel of record, as follows:

4         That Plaintiffs be permitted to amend the complaint on file by filing a First

5    Amended Complaint to join ALEXANDRE BALKANSKI as an additional plaintiff in

6    this action.   A copy of the proposed First Amended Complaint is attached hereto as

7    Exhibit "A" and is filed herewith.

8         That as to Alexander Balkanski only, the First Amended Complaint shall not be

9    deemed to relate back to the filing of the original action and for purposes of any statute

10   of limitations shall be deemed filed as of the date of this stipulation, November 22,

11   2006.

12         That the defendant waives notice and service of the First Amended Complaint

13   and shall not be required to answer the amendment, and that all denials, responses and

14   affirmative defenses contained in Defendant's answer filed to the original complaint

15   shall be responsive to the amended complaint.

16

17   Dated: November 24, 2006       ANTHONY B. GORDON
                                        A Professional Law Corporation

18

19

20                           By: _____

21                               Anthony B. Gordon
                                 Attorneys for Plaintiffs THOMAS FALLON,

22                                  ROBERT PUETTE, CARL REDFIELD AND RICK
                                 TIMMINS

23   Dated: November ___, 2006      MURPHY, PEARSON, BRADLEY & FEENEY

24

25                          By: _____

26                               James A. Murphy
                                 Attorneys for Defendant LOCKE, LIDDELL &
                                 SAPP, LLP

27

28

**STIPULATION AND [PROPOSED] ORDER GRANTING PLAINTIFF LEAVE
TO FILE A FIRST AMENDED COMPLAINT**

1

## <u>ORDER</u>

2

PURSUANT TO THE STIPULATION, IT IS SO ORDERED:

3

4

Dated: ~~November~~ __, 2006

5

December 7, 2006

~~Honorable Richard Seeborg~~

6

~~United States Magistrate Judge~~
~~XXXXXXXXXXXXXXXXXXXXXX~~

7

/s/ Ronald M. Whyte

8

United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATION AND ~~[PROPOSED]~~ ORDER GRANTING PLAINTIFF LEAVE
TO FILE A FIRST AMENDED COMPLAINT**

# EXHIBIT "A"

1    ANTHONY B. GORDON, (SBN 108368)
     ANTHONY B. GORDON, a Professional Law Corporation
2    5550 Topanga Canyon Boulevard, Suite 200
     Woodland Hills, CA 91367-6478
3    (818) 887-5155 Phone
     (818) 887-5154 Fax

4

5    Attorneys for Plaintiffs THOMAS FALLON, ROBERT PUETTE,
     CARL REDFIELD, RICK TIMMINS AND ALEXANDRE BALKANSKI

6

7

8           **IN THE UNITED STATES DISTRICT COURT FOR**

9           **THE NORTHERN DISTRICT OF CALIFORNIA**

10              **SAN JOSE DIVISION**

11

| | |
|---|---|
| THOMAS FALLON, an individual, ROBERT PUETTE, an individual, CARL REDFIELD, an individual, RICK TIMMINS, an individual, ALEXANDRE BALKANSKI, an individual, on behalf of each, individually, and on behalf of the general public, <br><br>      Plaintiffs, <br><br> vs. <br><br> LOCKE, LIDDELL & SAPP, LLP, a Texas limited professional partnership; and DOES 1 through 100, <br><br>      Defendants. | Case No. C 04-3210 RMW <br><br> **[PROPOSED] FIRST AMENDED COMPLAINT FOR:** <br><br> **(1)**    **Breach of Contract;** <br><br> **(2)**    **Breach of Fiduciary Duty (Constructive Fraud);** <br><br> **(3)**    **Professional Negligence;** <br><br> **(4)**    **Negligent Misrepresentation;** <br><br> **(5)**    **Intentional Misrepresentation;** <br><br> **(6)**    **Unfair Business Practices (Business & Professions Code §§ 17200, *et seq.*)** <br><br> **DEMAND FOR JURY TRIAL** |

25        Plaintiffs THOMAS FALLON, ROBERT PUETTE, CARL REDFIELD, RICK

26 TIMMINS and ALEXANDRE BALKANSKI (collectively "PLAINTIFFS") allege as

27 follows:

28

## NATURE OF THE CASE

1.     This is an action for damages arising out of claims for breach of contract, breach of fiduciary duty, professional negligence, fraud, and unfair business practices against defendant LOCKE, LIDDELL & SAPP, LLP ("LL&S") .

2.     LL&S is a Texas law firm that ERNST & YOUNG, LLP ("E&Y") obtained on behalf of PLAINTIFFS to provide PLAINTIFFS with a series of tax opinion letters that sanctioned the "Contingent Deferred Swap Strategy," ("CDS Strategy"), a specific tax shelter that E&Y was selling to numerous individuals, including the PLAINTIFFS and other members of the general public.  The strategy involved creating  partnerships for PLAINTIFFS, and each of them, and members of the general public, and were structured by defendants for the sole purpose of obtaining tax benefits.

3.     LL&S, in consideration for providing PLAINTIFFS, and each of them, and members of the general public, with a tax opinion that would induce them to invest millions of dollars in the CDS Strategy, charged each PLAINTIFF (and other members of the general public) a fee of $50,000 for the same recycled opinion letters, which LL&S designed to assuage any concerns regarding the legitimacy of the "CDS Strategy."

4.     LL&S, as attorneys for PLAINTIFFS (and other members of the public), owed each of them fiduciary and other duties to act with the utmost honesty, integrity and independence in protecting and advancing each of their respective rights and objectives.

5.     LL&S's representation of PLAINTIFFS created a serious conflict of interest between LL&S's loyalty to PLAINTIFFS and E&Y, which conflict rendered LL&S incapable of acting independently and in the best interests of PLAINTIFFS and the public who retained LL&S.  Neither defendant LL&S nor E&Y made PLAINTIFFS (or others who retained them) aware of this conflict of interest, or ever requested that PLAINTIFFS (or others who retained them) waive such conflicts.

2

6.     LL&S, in order to preserve a relationship with E&Y, and at the same time earn a $50,000 fee for providing recycled opinion letters, relinquished its independence and integrity as legal advisor for PLAINTIFFS (and others who retained them) by providing tax opinion letters that justified theirs (and other clients') decisions to invest in the CDS Strategy, at great profit to both E&Y and defendant LL&S.

7.     The CDS Strategy is the type of tax strategy that was the subject of the United States Senate Permanent Subcommittee's in-depth investigation into the development, marketing, and implementation of abusive tax shelters by professional organizations such as accounting firms, banks, investment advisors and law firms.  In November 2003, the Permanent Subcommittee on Investigations issued its report captioned: "U.S. TAX SHELTER INDUSTRY: THE ROLE OF ACCOUNTANTS, LAWYERS, AND FINANCIAL PROFESSIONALS."

8.     The Internal Revenue Service ("IRS") and the California State Franchise Tax Board ("CSFTB") have found these to be abusive tax shelters, which has resulted in millions of dollars of damages to members of the public, including PLAINTIFFS, in the form of arrear taxes, penalties and interest, among other things.

9.     As a direct and proximate result of defendant's breach of contract, negligence, fraud, breach of fiduciary duty, and unfair practices, and in complete disregard of PLAINTIFFS' (and the public's) rights, PLAINTIFFS have been substantially damaged and have incurred substantial costs, including paying $50,000 each for the privilege of receiving and being misled by the wrongful LL&S legal opinion; unwinding the CDS Strategy;  and incurring exposure to back taxes, penalties and interest to the IRS and California Franchise Tax Board, all in an amount to be proved at trial.

///

///

///

[PROPOSED] FIRST AMENDED COMPLAINT

## PARTIES

**PLAINTIFFS:**

10.     Plaintiff ROBERT PUETTE is now and at all relevant times resides and works in the State of California, County of Santa Clara.  Plaintiff PUETTE invested an amount of $6,666,667 to acquire a limited partnership interest in a partnership specifically created for his participation in the CDS Strategy  known as "Robert Puette Trading Partners, LLP."

11.     Plaintiff CARL REDFIELD is an individual that resides and/or works in the State of California, County of Santa Clara.  Plaintiff REDFIELD invested an amount of $10,000,000 to acquire a limited partnership interest in a partnership specifically created for his participation in the CDS Strategy  known as "Carl Redfield Trading Partners, LLP."

12.     Plaintiff TOM FALLON is an individual that resides and works in the State of California, County of Santa Clara.  Plaintiff FALLON invested an amount of $8,000,000 to acquire a limited partnership interest in a partnership specifically created for his participation in the CDS Strategy  known as "Tom Fallon Trading Partners, LLP."

13.     Plaintiff RICK TIMMINS is an individual that resides and works in the State of California, County of Santa Clara.  Plaintiff TIMMINS  invested an amount of $20,000,000 to acquire a limited partnership interest in a partnership specifically created for his participation in the CDS Strategy  known as "Rick Timmins Trading Partners, LLP."

14.     Plaintiff ALEXANDRE BALKANSKI is an individual that resides and works in the State of California, County of Santa Clara.  Plaintiff BALKANSKI invested an amount of $6,666,667 to acquire a limited partnership interest in a partnership specifically created for his participation in the CDS Strategy  known as "Alexandre Balkansky Trading Partners, L.P."

///

4

[PROPOSED] FIRST AMENDED COMPLAINT

**DEFENDANTS:**

15.     Defendant LL&S is a Texas law firm based in Dallas with offices in Austin, Houston and New Orleans.  LL&S have rendered legal services to clients in California, including PLAINTIFFS.

16.     PLAINTIFFS are unaware of the names, capacities, and/or legal responsibility, of defendants sued herein as DOES 1 through 100, inclusive, are informed and believe that each such fictitiously-named defendant proximately caused and/or contributed to, or are otherwise responsible for the damages sustained by PLAINTIFFS, as alleged herein.  PLAINTIFFS will amend this complaint to allege their true names and capacities when ascertained.  Furthermore, PLAINTIFFS and members of the general public are informed and believe that other clients of defendants were the victims of the same malfeasance and misconduct alleged herein against defendants, during the same period at issue herein.  The complaint will be amended to name these additional victims as plaintiffs upon their discovery.

17.     PLAINTIFFS are informed and believe, and thereby allege that each of the defendants herein was at all times relevant hereto the agent, employee, representative, employee, joint-venturer, principal, aider/abettor, or co-conspirator of the remaining defendants and was acting at least in part within the course and scope of such relationship, with the approval, knowledge, authority, acquiescence and/or ratification of each of the remaining defendants.

## GENERAL ALLEGATIONS

18.     Defendant LL&S was at all times aware that E&Y had solicited PLAINTIFFS (and other members of the public) to invest in the CDS Strategy by forming limited partnerships in their own names for the sole purpose of obtaining substantial tax benefits. The general partner in each partnership was BOLTON CAPITAL PLANNING, LLC ("BOLTON"), a registered investment adviser based in Dallas, Texas.

[PROPOSED] FIRST AMENDED COMPLAINT

19.   PLAINTIFFS (and other members of the public) entered into virtually identical written contracts with defendant LL&S concerning the nature and scope of LL&S's engagement.  Each LL&S letter specifically provided the following:

- "The business of the Partnership [in which each PLAINTIFF (and other members of the public) would become a partner] involves sophisticated financial strategies and complex tax issues.  Because of our understanding of this investment, Ernst & Young LLP has referred you to us for advice on its tax consequences";

- "We will provide you with an opinion of the principal tax consequences of your investment";

- "As part of this service, we will review all of the documents [which were nearly identical for each PLAINTIFF] that you signed as part of your investment";

- "After our review of these documents, we will discuss the investment with you and provide you with an opinion of its tax consequences";

- "As you are aware, investment in the Partnership is anticipated to provide you with substantial tax benefits."

- Each PLAINTIFF (and other members of the public) were required to pay $50,000 for the opinion letter.

20.   Neither LL&S nor any of its partners or associates ever met or spoke with the PLAINTIFFS concerning the investment, including the basis of the tax strategy and/or the dangers relating to them, contrary to the promises in the retainer agreements. All contacts with the PLAINTIFFS were through E&Y and BOLTON, and the opinion letters were virtually identical in content for each LL&S client, including PLAINTIFFS, and reflected no individualized interaction with any of the PLAINTIFFS.

21.   Before PLAINTIFFS retained LL&S to act as their attorney and legal advisor, LL&S had already undertaken to provide a favorable tax opinion to the PLAINTIFFS endorsing the validity of the CDS Strategy and minimizing the serious

[PROPOSED] FIRST AMENDED COMPLAINT

1   consequences that could result should the IRS find it to be a potentially abusive and

2   illegal tax shelter.

3       22.    The opinion letters provided a detailed exposition of tax shelters and the

4   distinction between legitimate tax avoidance and unlawful tax evasion.  Each opinion

5   concluded, however, with the LL&S opinion that each "Partnership **should** be respected

6   [by the taxing authorities] as a partnership for federal income tax purposes [emphasis

7   added]," and that there is "substantial authority" for the positions upon which its legal

8   opinions are expressed.  The use of the phrase "***should be respected***," in the context of

9   this taxpayer advice, was meant to convey a great level of confidence with regard to the

10   tax opinion expressed, and stands in contrast to less confident tax opinions often

11   provided, such as those stating that an investment  "***more likely than not***" will be

12   respected for tax purposes.  LL&S' opinion letters were defective in that they sought to

13   justify and rationalize the legitimacy of the CDS Strategy without an attempt to address

14   the degree of risk or consequences should the tax authorities declare them to be abusive

15   tax shelters.

16       23.    Furthermore, the opinion letters, while touting the "substantial authority"

17   upon which its conclusions rested, failed to mention various tax law and other

18   authorities which defendants knew, or recklessly disregarded, had rejected transactions

19   similar to the CDS transactions that LL&S opined should pass muster with the IRS.

20       24.    LL&S, instead of alerting PLAINTIFFS to such legal and other

21   authorities, focused on justifying PLAINTIFFS' decisions to invest in the CDS Strategy.

22       25.    The tax opinion letters were a substantial factor in the scheme whereby

23   PLAINTIFFS and members of the public were induced to invest tens of millions of

24   dollars in an investment which defendants knew, or recklessly disregarded, were abusive

25   tax shelters, and which exposed PLAINTIFFS to damages which they did in fact sustain.

26   ///

27   ///

28   ///

7

[PROPOSED] FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

(Against Defendant LL&S and Does 1 through 25)

26.    PLAINTIFFS (and other members of the public) re-allege and incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

27.    PLAINTIFFS (and other members of the public) entered into written retainer agreements with LL&S under which LL&S agreed to provide them with professionally competent legal services, specifically tax advice.  The retainer agreements expressly provided that LL&S:

- would at all times represent PLAINTIFFS with integrity and independence;
- owed PLAINTIFFS allegiance, learning, skill, and industry, and will be loyal and committed to PLAINTIFFS' lawful objectives; and
- would exercise the applicable standard of care, loyalty and honesty, and comply with all applicable rules of professional conduct.

28.    PLAINTIFFS have performed each and every obligation, condition and covenant required of them under the terms of the standard LL&S retainer agreement that each agreed to.

29.    LL&S breached the retainer agreement with PLAINTIFFS (and members of the public) in several ways, including, for example, that LL&S:

- failed to render proper, adequate legal advice to PLAINTIFFS concerning the serious consequences of investing millions of dollars in an investment which, more likely than not, would be questioned by the IRS as a sham tax shelter, thereby requiring PLAINTIFFS to sustain millions of dollars in damages;
- failed to consider and alert PLAINTIFFS to various legal and other authorities which had rejected transactions similar to the CDS transactions;
- failed to meet or speak to PLAINTIFFS concerning the investment; and
- gave PLAINTIFFS bad advice.

8

[PROPOSED] FIRST AMENDED COMPLAINT

30.     As a direct and proximate result of LL&S' conduct as described herein, PLAINTIFFS have suffered substantial damages in that they have paid millions of dollars for an investment which the IRS and the California State Franchise Tax Board have found to be a deeply flawed, potentially abusive or illegal tax shelter; paid substantial sums for legal services which were rendered in violation of the retainer agreements; have incurred or will incur tax penalties and interest; have and will continue to incur substantial additional costs in hiring new tax and legal advisors to rectify the situation; and have foregone legitimate tax savings.

31.     As a proximate cause thereof, PLAINTIFFS have been injured in an amount to be proved at trial, but believed to be several million dollars.

## SECOND CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

(Against Defendant LL&S and Does 1 through 25)

32.     PLAINTIFFS re-allege and incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

33.     As PLAINTIFFS' attorney, LL&S owed PLAINTIFFS a fiduciary duty to act in their best interests at all times, including to act competently, independently, and free of any conflict of interest with any other party, including E&Y and BOLTON.

34.     LL&S issued the tax opinions to PLAINTIFFS and other investors concerning their substantial investment of millions of dollars in the CDS Strategy without ever meeting with them, or obtaining any information from them, based only on information conveyed to them by E&Y.  Additionally, the opinions lacked a reasonable basis, and contained bad advice.

35.     Moreover, there existed a close business and professional relationship between LL&S, on the one hand, and E&Y and/or BOLTON, on the other hand.  With a view to preserving and further expanding this relationship, LL&S, E&Y and BOLTON formed an alliance that resulted in each of them earning substantial fees and profits from

9

1   the professional, accounting, tax, legal and investment services each provided to

2   PLAINTIFFS and other investors.  By routinely directing clients to LL&S to obtain tax

3   opinion letters, E&Y provided a steady stream of income for LL&S, who were paid at

4   least $50,000 per opinion.  The ongoing business relationship with E&Y and BOLTON

5   placed LL&S in a conflict of interest position, and seriously called into question LL&S'

6   independence.

7          36.     LL&S put the interests of the E&Y/Bolton alliance before PLAINTIFFS'

8   interests, whom they purported to represent.  In so doing, LL&S was rendered incapable

9   of acting independently and giving impartial legal advise to PLAINTIFFS that was in

10  PLAINTIFFS' best interests as opposed to the interests of LL&S, E&Y and BOLTON.

11         37.     LL&S engaged in a course of conduct to further its own economic

12  interests, rather than to protect PLAINTIFFS' interests.  LL&S's conduct constituted

13  malice, oppression or fraud under California Civil Code, § 3294, thereby entitling

14  PLAINTIFFS to punitive damages in an amount appropriate to punish or set an example

15  of LL&S.

16         38.     As a direct and proximate result of LL&S' conduct as described herein,

17  PLAINTIFFS have suffered substantial damages in that they have paid millions of

18  dollars for an investment which the IRS and the California State Franchise Tax Board

19  have found to be a deeply flawed, potentially abusive or illegal tax shelter; paid

20  substantial sums for legal services which were rendered in violation of the standard of

21  care and duties which LL&S owed to PLAINTIFFS (and other investors); have incurred

22  or will incur tax penalties and interest; have and will continue to incur substantial

23  additional costs in hiring new tax and legal advisors to rectify the situation; and have

24  foregone legitimate tax savings.

25         39.     As a proximate cause thereof, PLAINTIFFS have been injured in an

26  amount to be proved at trial, but believed to be several million dollars.

27  ///

28  ///

10

[PROPOSED] FIRST AMENDED COMPLAINT

### THIRD CAUSE OF ACTION

### PROFESSIONAL NEGLIGENCE

(Against Defendant LL&S and Does 1 through 24)

40.     PLAINTIFFS re-allege and incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

41.     At all relevant times, LL&S held itself out to PLAINTIFFS as possessing special knowledge and expertise with respect to determining the validity of tax-advantaged investments.

42.     LL&S knew of the importance to PLAINTIFFS of rendering an accurate and correct legal opinion which, among other things, was untainted by conflicts of interest, properly assessed the consequences from investing in the CDS Strategy, and assisted PLAINTIFFS in properly assessing the consequences of investing millions of dollars in the CDS Strategy, and in complying with all applicable tax laws and regulations.

43.     LL&S breached its duty of care owed to PLAINTIFFS by, among other things:

- Ignoring the provisions of Treasury Regulation § 1.6664-4(c)(1)(ii) which provides, among other things, that:

   "The advise [in an opinion letter] must not be based on unreasonable factual or legal assumptions (including assumptions as to future events) and must not unreasonably rely on the representations, statements, findings or agreements of the taxpayer or any other person;

- Failing to take into account or advise PLAINTIFFS of the various legal and other authorities concerning the marketing of dubious and sham tax shelters that closely resembled the CDS Strategy that E&Y was marketing to PLAINTIFFS and members of the public; and

- Knowingly or recklessly disregarding that the CDS Strategy would not

[PROPOSED] FIRST AMENDED COMPLAINT

1    pass muster with the IRS or state tax authorities, but failing to advise

2    PLAINTIFFS of the inherent risks associated with participating in the

3    CDS Strategy.

4    44.    As a proximate result of such negligence, PLAINTIFFS have suffered

5    substantial damages in that they have paid millions of dollars for an investment which

6    the IRS and the California State Franchise Tax Board have found to be a deeply flawed,

7    potentially abusive or illegal tax shelter; paid substantial sums for legal services which

8    were rendered in violation of the standard of care and duties which LL&S owed to

9    PLAINTIFFS (and other investors); have incurred or will incur tax penalties and

10   interest; have and will continue to incur substantial additional costs in hiring new tax

11   and legal advisors to rectify the situation; and have foregone legitimate tax savings.

12   45.    As a proximate cause thereof, PLAINTIFFS have been injured in an

13   amount to be proved at trial, but believed to be several million dollars.

14

15   **FOURTH CAUSE OF ACTION**

16   **NEGLIGENT MISREPRESENTATION**

17   (Against Defendant LL&S and Does 1 through 25)

18   46.    PLAINTIFFS re-allege and incorporate by reference all of the

19   allegations contained in the preceding paragraphs of this Complaint as though fully set

20   forth herein.

21   47.    LL&S provided written legal opinions to each individual PLAINTIFF

22   which, among other things, opined that:

23   •    each "Partnership should be respected as a partnership for federal income

24        tax purposes," thereby indicating a great level of confidence with regard to

25        the tax opinion expressed, and much more confidence than the oft-used

26        "*more likely than not*" language commonly incorporated in opinion letters

27        like those which PLAINTIFFS received; and

28   •    there is "substantial authority" for the positions upon which LL&S's legal

12

[PROPOSED] FIRST AMENDED COMPLAINT

1  opinions are expressed.

2      48.    In fact, there was no reasonable basis for the opinion letters provided to

3  the PLAINTIFFS.  For example, the opinions:

4      •    contained the "should be respected" language, without a reasonable basis;

5      •    sought to justify and rationalize the legitimacy of the CDS Strategy

6      without an attempt to address the degree of risk or consequences should

7      the IRS declare them to be abusive tax shelters;

8      •    failed to address various authorities which defendants knew, or recklessly

9      disregarded, had rejected transactions similar to the CDS transactions that

10      LL&S opined should pass muster with the IRS; and

11      •    concealed the conflicts of interest which tainted the legal opinions.

12      49.    PLAINTIFFS justifiably relied on the LL&S opinion letters in deciding to

13  make, maintain, and/or not withdraw from the investment.

14      50.    The LL&S endorsement of the CDS Strategy was a substantial factor in

15  inducing PLAINTIFFS to invest tens of millions of dollars in the CDS Strategy.

16

17  **FIFTH CAUSE OF ACTION**

18  **INTENTIONAL MISREPRESENTATION**

19  (Against Defendant LL&S and Does 1 through 24)

20      51.    PLAINTIFFS re-allege and incorporate by reference all of the

21  allegations contained in the preceding paragraphs of this Complaint as though fully set

22  forth herein.

23      52.    L L&S provided written legal opinions to each individual PLAINTIFF

24  which, among other things, opined that:

25      •    each "Partnership should be respected as a partnership for federal income

26      tax purposes," thereby indicating a great level of confidence with regard to

27      the tax opinion expressed, and much more confidence than the oft-used

28      "*more likely than not*" language commonly incorporated in opinion letters

13

[PROPOSED] FIRST AMENDED COMPLAINT

1      like those which PLAINTIFFS received; and

2         •    there is "substantial authority" for the positions upon which LL&S's legal

3              opinions are expressed.

4      53.    In fact, the opinion letters misrepresented and omitted material facts.  The

5  truth was that the opinions:

6         •    contained the "should be respected" language, when defendants knew or

7              recklessly disregarded that such language grossly overstated reality;

8         •    sought to justify and rationalize the legitimacy of the CDS Strategy

9              without an attempt to address the degree of risk or consequences should

10             the IRS declare them to be abusive tax shelters;

11        •    failed to address various authorities which defendants knew, or recklessly

12             disregarded, had rejected transactions similar to the CDS transactions that

13             LL&S opined should pass muster with the IRS; and

14        •    concealed the conflicts of interest which tainted the legal opinions.

15     54.    Defendants made these misrepresentations and omissions knowing them to

16  be false, or recklessly disregarding their falsity.

17     55.    PLAINTIFFS justifiably relied on the LL&S opinion letters in deciding to

18  make, maintain, and/or not withdraw from the investment.

19     56.    The LL&S endorsement of the CDS Strategy was a substantial factor in

20  inducing PLAINTIFFS to invest tens of millions of dollars in the CDS Strategy.

21     57.    In addition, defendants' acts were oppressive, fraudulent, malicious,

22  intended to cause injury to PLAINTIFFS, and were carried on with undue influence, and

23  in willful and conscious disregard of the PLAINTIFFS' rights, and in the best interests

24  of the defendants, not the PLAINTIFFS.

25  ///

26  ///

27  ///

28  ///

[PROPOSED] FIRST AMENDED COMPLAINT

### SIXTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES

(By PLAINTIFFS and members of the general public against

Defendant LL&S and Does 1 through 24)

58.     PLAINTIFFS re-allege and incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein. PLAINTIFFS bring this cause of action in their individual capacities and as representatives of the general public, pursuant to Business and Professions Code §§ 17200 et. seq.

59.     California Business and Professions Code § 17200 prohibits acts of unfair competition, which shall mean and include any "unlawful, unfair or fraudulent business act or practice."

60.     Defendants' misrepresentations and omission of the material facts set forth in the complaint herein, misled PLAINTIFFS and the general public in violation of California Civil Code §§ 1572, 1709 and 1710, as well as principles of common law. PLAINTIFFS are further informed and believe that defendants gouged consumers with exorbitant rates for the services rendered.  Accordingly, defendants have violated the proscription in Business and Professions Code § 17200 against engaging in an unlawful business act or practice.

61.     In undertaking the acts described herein with regard to PLAINTIFFS and the general public, defendants have also violated Civil Code §§ 1572(a) and 1710(2) by failing to fulfill their duty to make honest, accurate representations and disclose all material facts to, and refrain from misleading, its clients, including PLAINTIFFS. Accordingly, defendants have violated Business and Professions Code § 17200 proscription against engaging in unlawful business acts or practices.

WHEREFORE, PLAINTIFFS pray for judgment against all defendants as follows:

[PROPOSED] FIRST AMENDED COMPLAINT

**FOR BREACH OF CONTRACT**

**FIRST CAUSE OF ACTION**

1.    For general damages for breach of contract;

2.    For incidental damages for breach of contract in an amount to be determined at trial, plus pre-judgment interest.

**FOR BREACH OF FIDUCIARY DUTY**

**SECOND CAUSE OF ACTION**

3.    For general damages for breach of fiduciary duty in an amount to be determined at trial, plus pre-judgment interest and other damages according to proof;

4.    For special damages in an amount to be determined at trial;

5.    For punitive and exemplary damages;

**FOR PROFESSIONAL NEGLIGENCE**

**THIRD CAUSE OF ACTION**

6.    For general damages for legal malpractice in an amount to be determined at trial;

7.    For special damages in an amount to be determined at trial;

**FOR NEGLIGENT MISREPRESENTATION**

**FOURTH CAUSE OF ACTION**

8.    For general damages for legal malpractice in an amount to be determined at trial;

9.    For special damages in an amount to be determined at trial;

**FOR INTENTIONAL MISREPRESENTATION**

**FIFTH CAUSE OF ACTION**

10.    For general damages for breach of fiduciary duty in an amount to be

[PROPOSED] FIRST AMENDED COMPLAINT

1    determined at trial, plus pre-judgment interest and other damages according to proof;

2         11.    For special damages in an amount to be determined at trial;

3         12.    For punitive and exemplary damages;

4

5                    **FOR UNFAIR BUSINESS PRACTICES**

6                         **SIXTH CAUSE OF ACTION**

7         13.    An order providing for full restitution in favor of PLAINTIFFS, and the

8    general public of all monies wrongfully acquired by defendants by means of the acts of

9    unfair business practices in connection with endorsing the CDS Strategy;

10        14.    An order requiring the disgorgement of the defendants' ill-gotten gains

11   wrongfully acquired by defendants by means of the acts of unfair competition and false

12   advertising;

13        15.    Attorney's fees pursuant to CCP §1021.5 and common law;

14

15

16                    **ON ALL CAUSES OF ACTION**

17        16.    Costs of suit; and

18        17.    Other or alternative relief as the Court may deem proper.

19

20                              ANTHONY B. GORDON
                                A Professional Law Corp.

21

22   Dated: November **24**, 2006          By: _____

23                              Anthony B. Gordon
                                Attorneys for Plaintiffs THOMAS FALLON,
24                              ROBERT PUETTE, CARL REDFIELD,
                                RICK TIMMINS AND ALEXANDRE
25                              BALKANSKI

26

27

28

                                    17
                        [PROPOSED] FIRST AMENDED COMPLAINT

1

**PROOF OF SERVICE**
[1013A (3) C.C.P. - Revised 5/1/88]

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 5550 Topanga Canyon Boulevard, Suite 200, Woodland Hills, California 91367-6478.

4

5

    On November 30, 2006, I served the foregoing document(s) described as:

6

7

**STIPULATION AND [PROPOSED] ORDER GRANTING PLAINTIFF LEAVE TO FILE A FIRST AMENDED COMPLAINT; EXHIBIT "A" [PROPOSED] FIRST AMENDED COMPLAINT**

8

9

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

10

James A. Murphy
Harlan B. Watkins

11

MURPHY, PEARSON, BRADLEY & FEENEY
88 Kearny Street, 10th Floor

12

San Francisco, CA 94108-5530

13

14

    I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Woodland Hills, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

15

16

17

18

    Executed on November 30, 2006, at Woodland Hills, California.

19

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

20

21

22

23

                Linda Gordon

24

25

26

27

28