**E-FILED on**    9/1/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS FALLON, an Individual, ROBERT PUETTE, an Individual, CARL REDFIELD, an Individual, RICK TIMMINS, an Individual, on behalf of each, individually, and on behalf of the general public,<br><br>        Plaintiffs,<br>   v.<br><br>LOCKE, LIDDELL & SAPP, LLP, a Texas limited professional partnership, and DOES 1 through 100,<br><br>        Defendants. | Case No. C-04-03210 RMW<br><br>MOTION DENYING DEFENDANT'S SUMMARY JUDGMENT MOTION<br><br>**[Re Docket No. 111]** |

Defendant Locke, Liddell & Sapp ("Defendant" or "LL&S") moves for summary judgment on the basis that Plaintiffs Robert Puette, Carl Redfield, Rick Timmins, and Tom Fallon (collectively, "Plaintiffs") suffered no damages. Plaintiffs oppose the motion. The court has considered the moving and responding papers and the arguments made by the parties at the hearing. For the reasons set forth below, the motion is denied.

**I. BACKGROUND**

Defendant is a Texas law firm based in Dallas, with offices in Austin, Houston, and New Orleans. In 1999, Defendant became involved with Ernst & Young ("E&Y") in the marketing of a tax strategy called the Contingent Deferred Swap strategy ("CDS strategy"). This strategy was intended

to provide participants – wealthy, aggressive investors – with tax savings by converting ordinary income into capital gains and by deferring the payment of taxes for one year. E&Y contacted Brent Clifton, an attorney at LL&S, to obtain his preliminary opinion on whether the International Revenue Service ("IRS") would approve of the CDS strategy. Clifton reported back to E&Y that Defendant would provide a "should" opinion on the CDS Strategy. Defendant then made tax evaluations for Defendant's customers in the form of opinion letters and represented that it had an arm's length relationship with E&Y.

Plaintiffs entered into contracts with Defendant "concerning the nature and scope of LL&S's engagement" that would provide Plaintiffs with a legal analysis of E&Y's CDS strategy. Letters sent by Defendant to Plaintiffs stated that Defendant had a special understanding of investment; that an opinion would be provided of the "principle [sic] tax consequences of [Plaintiffs'] investment"; that Defendant would review all of Plaintiffs' documents and discuss the investment with Plaintiffs and give its opinion of the tax consequences; that investment should provide Plaintiffs with "substantial tax benefits"; and that each Plaintiff would pay $50,000 for the opinion letter. Plaintiffs each invested between $6 million and $20 million to acquire a limited partnership interest to carry out the CDS strategy marketed by E&Y. Plaintiffs allege that Defendant never met nor spoke with them concerning their investment strategies and never advised of its financial relationship with E&Y.

Plaintiffs claim that Defendant had decided to provide Plaintiffs with "favorable tax opinion[s]" before Plaintiffs ever retained it as a legal tax advisor. The opinion letters provided a detailed explanation of tax shelters and distinctions between lawful tax avoidance and unlawful tax evasion. The opinion letters specifically stated that the "partnership should be respected [by the taxing authorities] as a partnership for federal income tax purposes." The letters claimed to rely on "substantial authority" for the opinion. Plaintiffs allege that this wording communicated to Plaintiffs a sense of confidence on Defendant's part that the tax strategy was sound and would be effective. Additionally, the letter failed to mention adverse tax law about which Defendant allegedly was aware.

On May 28, 2002, the IRS issued a notice declaring that the CDS strategy was "not allowable." It advised individuals who had used this strategy to file amended returns. As set forth in Defendant's motion for summary judgment, E&Y, at its expense, engaged Fulbright & Jaworski to represent

1  Plaintiffs and other CDS participants in the IRS challenge to CDS.  The IRS eventually made an early
2  disclosure offer to CDS participants, whereby in exchange for an early disclosure of their participation
3  in CDS, the IRS would waive any penalties.  Without consulting Defendant, Plaintiffs Fallon, Timmins,
4  and Redfield, rejected the terms and conditions of the IRS's early disclosure offer and, later, when they
5  settled with the IRS, agreed to the following penalties for underpayment of tax: (1) Fallon–$415,420;
6  (2) Timmins–$324,425; (3) Redfield–$519,414. Puette avoided the imposition of any penalties because
7  he complied with the IRS's early disclosure offer.  The IRS ultimately settled with the Plaintiffs to
8  resolve the dispute concerning the tax consequences of the CDS investments.

9  On June 15, 2004, Plaintiffs filed a complaint against Defendant alleging breach of contract,
10 breach of fiduciary duty, professional negligence, negligent misrepresentation, intentional
11 misrepresentation, and unfair business practices under California Business and Professions Code section
12 § 17200.

13 On May 21, 2008, Defendant moved for summary judgment.  Plaintiffs oppose the motion.  The
14 court heard oral argument on July 25, 2008.

## II. LEGAL STANDARD

16 A motion for summary judgment should be granted if there is no genuine issue of material
17 fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson*
18 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of
19 informing the Court of the basis for the motion and identifying the portions of the pleadings,
20 depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a
21 triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

22 If the moving party meets this initial burden, the burden shifts to the non-moving party to
23 present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*,
24 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents evidence from
25 which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve
26 the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d
27 1132, 1134-36 (9th Cir. 1991).

28

### III. DISCUSSION

Plaintiffs allege six causes of action: (1) Breach of Contract; (2) Breach of Fiduciary Duty; (3) Professional Negligence; (4) Negligent Misrepresentation; (5) Intentional Misrepresentation; and (6) Unfair Business Practices under California Bus. & Prof. Code 17200 *et seq*. Plaintiffs allege damages as a result of having to pay taxes, interest on unpaid taxes, professional fees, and penalties to the IRS for tax underpayments. Plaintiffs also seek punitive damages for Defendant's alleged fraud.

Defendant asserts that each of Plaintiffs' claims requires proof of damages. Defendant seeks summary judgment against all of Plaintiffs' claims, asserting that Plaintiffs suffered no damages. Defendant asserts that Plaintiffs' CDS investments generated profits and they still achieved some tax savings through CDS. Thus, Defendants assert that Plaintiffs suffered no damages because they are in a better position financially than they would have occupied had they not invested in the CDS strategy.

Plaintiffs assert that Defendant's damage analysis is "off-point". Plaintiffs assert that any gains from the investment are irrelevant because Plaintiffs consulted Defendant for tax advice, not investment advice. The question, plaintiffs argue, is whether Plaintiffs suffered damages as a consequence of Defendant's fraudulent tax advice, not whether they made money from the investment. Plaintiffs assert that Defendant, a 400-lawyer national law firm, fraudulently misrepresented and concealed that it was colluding with E&Y, that CDS bore all the characteristics of what the IRS deemed an abusive tax shelter, and that although it represented to Plaintiffs that the IRS "should" allow the deductions, Defendant in fact knew CDS was an aggressive tax shelter that the IRS would challenge. However, in order to induce Plaintiffs' investment, Defendant for its own financial gain and pursuant to its participation in the CDS strategy with E&Y, assured Plaintiffs that the investment presented a legitimate tax strategy that should be upheld in the event of an IRS challenge. The tax opinion letters were also purportedly intended to provide Plaintiffs with evidence that they relied in good faith on counsel if the IRS ever challenged the tax strategy and sought penalties. Plaintiffs each paid Defendant $50,000 for the initial tax opinions. Timmins paid an additional $75,000 for an add-on opinion.

1  Plaintiffs assert that they are at a minimum entitled to the return of collect the professional
2  fees they paid to Defendant as damages. Plaintiffs also assert they are entitled to pre-judgment
3  interest on those fees and punitive damages for Defendant's breach of fiduciary duty. Finally,
4  Plaintiffs seek damages as a result of having to pay taxes, interest on unpaid taxes and penalties to
5  the IRS for tax underpayments.

6  Defendant argues that even if Plaintiffs are entitled to recover the fees they paid to Defendant
7  for the tax advice and the penalties paid to the IRS, Plaintiffs still came out ahead on their CDS
8  investments and thus suffered no damages. Specifically, Defendant asserts "[r]emoving underpaid
9  taxes and interest from the equation, and, assuming for the sake of argument Plaintiffs are entitled to
10 recover professional fees paid in connection with CDS and penalties levied by the IRS, Plaintiffs
11 suffered no damages and actually made a substantial profit." Mot. at 13:10-11. In other words,
12 Defendant claims even if it gave fraudulent tax advice, it has no liability since Plaintiffs made
13 money on their investments.

14 Defendant cites *Eckert Cold Storage, Inc. v. Behl*, 943 F.Supp. 1230 (E.D. Cal. 1996), as
15 supporting its argument that Plaintiffs may not recover back taxes and interest as elements of
16 damages. In *Eckert*, plaintiffs, who alleged that an accounting firm giving tax advice made
17 misrepresentations regarding tax consequences of particular investment, could only recover damages
18 if they showed they would have avoided some tax liability by sheltering income in alternative
19 available investment. Defendant claims that plaintiffs have not done so here.

20 Defendant's position overlooks the fact that Plaintiffs are seeking damages other than the
21 taxes they had to pay. The damages Plaintiffs seek to recover flow from the alleged fraudulent tax
22 advice and not other investment advice. Therefore, whether the investment turned out to be a good
23 one is beside the point. Plaintiffs, if they prove their allegations, are entitled to at least the amounts
24 they paid to Defendant for the tax advice and possibly reimbursement for their tax penalties and
25 prejudgment interest on those damages. Plaintiffs may also be entitled to punitive damages.
26 Defendant will not be entitled to a set-off because Plaintiffs may have made money on the
27 investments. Defendant, however, appears to be correct that Plaintiffs are not entitled to back taxes
28 and interest as elements of damages (*see Eckert*, 943 F. Supp. at 1234; *Depalma v. Westland*

*Software House*, 225 Cal.App. 3d 1534, 1541 (1990)), but this does not mean Plaintiffs did not suffer damages.

### III.   ORDER

For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment.

DATED:      9/1/08

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**
Anthony B. Gordon       law@anthonybgordon.com
David Lefkowitz         dl@wplawgroup.com

**Counsel for Defendant(s):**
James A. Murphy         jmurphy@mpbf.com
Harlan B. Watkins       hwatkins@mpbf.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      9/1/08                          /s/ MAG
                                        **Chambers of Judge Whyte**